IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHYSICIANS MUTUAL INSURANCE )
COMPANY and PHYSICIANS LIFE )
INSURANCE COMPANY, )
) Civil Action No.: 06-cv-5124
Plaintiffs, )
) Suzanne B. Conlon, Judge
v. )
)
ASSET ALLOCATION AND )
MANAGEMENT CO., LLC, )

Defendant.

## MEMORANDUM OPINION AND ORDER

Physicians Mutual Insurance Company and Physicians Life Insurance Company ("Physicians") sue Asset Allocation and Management Co., LLC ("AAM") for injuries sustained as a result of AAM's alleged (i) professional negligence; (ii) breach of fiduciary duty; (iii) breach of contract; and (iv) fraud. Physicians move to bar evidence of AAM's "new defensive theory" regarding causation under Rules 26(e)(2) and 37 of the Federal Rules of Civil Procedure, or alternatively, for leave to join additional defendants under Rule 15 of the Federal Rules of Civil Procedure and to reopen discovery. For the reasons set forth below, Physicians' motion is denied.

## BACKGROUND

Physicians seek an order barring AAM from asserting a "new" causation defense, or alternatively for leave to add Greystone Funding Corporation and Greystone Servicing Corporation (collectively "Greystone") as defendants. Physicians argue that AAM waited until

discovery was nearly complete before disclosing and asserting a "new" causation defense, which served to implicate Greystone as potential defendants.

Physicians claim AAM, as their former investment advisor, made erroneous recommendations to purchase interests in four investment pools secured by HUD Section 8 low-income housing projects, and insured by the Federal Housing Administration ("FHA"), without conducting adequate due diligence. *See* Pls.' Mem. at 1. According to Physicians, they purchased these mortgage-backed securities at a high premium because AAM represented that "there existed 'call protection' or 'prepayment lockouts'. . . for either the full or a substantial part of the life of the underlying loans," which served to hedge Physicians' position with respect to any potential loss in the expected long-term profits from the investment. *See* Pls.' Second Amended Complaint at ¶¶ 13-14 ("Compl.").

The loans did contain prepayment lockouts. *See* Pls.' Mem. at 2; Def.'s Mem. at 4. The lockout covenants were obtained by Greystone Funding Corporation, the organizer of the three Section 8 pool investments, with the borrowers of the loans. *See* Pls.' Mem. at 2; Def.'s Mem. Ex. 5 at ¶¶ 4-5. Greystone Funding Corporation's sister company, Greystone Servicing Corporation, serviced the loans in the pool. *See* Pls.' Mem. at 1; Def.'s Mem. Ex. 5 at ¶ 4.

Notwithstanding the existence of the prepayment lockouts, loans in three of the four FHA projects were "called" prior to the stated maturity date, resulting in a payment to Physicians of the remaining loan balance at par value. *See* Def.'s Answer at 9. This early payment, according to Physicians, led to substantial losses of profit. *See* Pls.' Mem. at 2. As a result, Physicians maintain that AAM "failed to conduct adequate due diligence with respect to the effectiveness of the Agreements Not To Prepay and, thereby, caused Physicians' losses." Pls.' Mem. at 2. From

the outset of this litigation until discovery closed on August 6, 2007, Physicians has alleged that "as a direct and proximate result of [AAM's acts/omissions with respect to the underlying investment], Plaintiffs have suffered damages." Compl. ¶¶ 21, 26, 29, 36.

AAM has consistently denied the alleged misrepresentations and has denied that its conduct caused any injury to Physicians. Def.'s Answer ¶¶ 20-22, 26, 28, 34, 38, 41-42, and 45. These denials notwithstanding, on February 23, 2007, in response to Physicians' interrogatory seeking AAM's understanding of the "prepayments" on the loans, AAM stated:

> AAM's investigation continues and depends in large part on the documents in the possession, custody or control of Greystone, Inc. or its affiliates. AAM's understanding is that the loans were paid off in connection with the expiration of the HUD contracts with the owners of the mortgaged properties and/or a change in HUD's Section 8 program that made refinancing those properties financially attractive to the owners of the properties.

Def.'s Mem. Ex. 1 at 8. This understanding was later reaffirmed in a Rule 30(b)(6) deposition of John Schaefer, AAM's president, on May 21, 2007. *See* Pls.' Mem. Ex. 2 at 55-56. This factual stance, according to Physicians, was significant because it revealed AAM's position that "prepayments" were made consistent with the lockout agreements, thereby providing AAM with fodder for a lack of causation defense. *See* Pls.' Mem. at 2-3.

During this period, the parties undertook joint discovery of Greystone. Def.'s Mem. at 4-5. At some point in early 2007, Greystone produced documents regarding the underlying transactions to Physicians in response to subpoenas issued in late December 2006. *See* Dkt. No. 43 (Dec. 29, 2006). In addition, Robert Barolak, a representative of the Greystone entities, was deposed on May 4 and May 24, 2007. *See* Def.'s Mem. Ex. 2, 3. In the May 4 deposition, Barolak testified that the underlying mortgages were not modified at all when they were

3

refinanced in September 2002 and May 2003. *See* Def.'s Mem. Ex. 2 at 131:2-12. Rather, the loans were refinanced "in anticipation of," or "in contemplation of," HUD's new regulatory changes. *See* Def.'s Mem. Ex. 3 at 32:4-10, 37:22-38:14. Barolak further discussed documents that suggested the refinancing of some loans involved an assignment to USGI – only to be reassigned back to Greystone. *See* Def.'s Mem. Ex. 2 at 96:2-107:4. In addition, Barolak elaborated on another document that seemed to indicate loans were also sold by Greystone Servicing Corporation to "Jet Premier." *See id.* at 114:5-116:5.

As a result of discovery of Greystone, AAM continued to deny causing Physicians' losses, first in response to the allegations in Physicians' second amended complaint on June 19, 2007, and then in response to Physicians' request to admit that Greystone accepted prepayments on June 28, 2007. *See* Def.'s Mem. at 6. On July 2, 2007 – more than one month prior to the discovery cut-off – AAM served interrogatory responses (in response to Physicians' second set of interrogatories) indicating that it did not "believe (notwithstanding Mr. Barolak's testimony) that these loans prepaid but rather were re-purchased by a Greystone entity or a new investor." Def.'s Mem. Ex. 4. at 4-5. Physicians did not object to this interrogatory response, even though it amended AAM's earlier interrogatory answer on February 23, 2007.

AAM retained an expert, Douglass Sher, who issued a report on July 10, 2007, opining that there was no prepayment on the underlying mortgages, but rather a sale of the underlying loans in contravention of the pooling agreement. *See* Def.'s Mem. Ex. 5 at ¶¶ 6-7. The Sher report purportedly buttresses AAM's position that it did not cause Physicians' losses because it states a prepayment never occurred. *Id.* at ¶ 6. Physicians has since deposed Sher.

Physicians move to bar AAM's July 2, 2007 Interrogatory No. 18 response, the Sher report, and all other evidence supporting AAM's "new" causation theory because of untimely disclosure and prejudice. Physicians do not move to bar any evidence on admissibility grounds under the Federal Rules of Evidence.

## ANALYSIS

### I. Legal Standard

Physicians' motion operates as a motion *in limine* because it is a motion to exclude evidence before trial. Exclusion on a motion *in limine* is permissible only if the evidence is clearly inadmissible for any purpose. *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (Conlon, J.). Motions *in limine* are disfavored; admissibility questions should be ruled upon as they arise at trial. *Id.* Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. *Id.* Denial of a motion *in limine* does not mean evidence contemplated by the motion will be admitted at trial. *Id.* Instead, denial means the court cannot, or should not, determine whether the evidence in question should be excluded before trial. *Id.*; *see also United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) ("a ruling [on motion *in limine* is] subject to change based upon the court's exposure to the evidence at trial").

### II. Physicians' Motion to Bar Evidence of AAM's "New Defensive Theory"

The moving party bears the burden of presenting sufficient evidence to meet the high standard applicable to motions *in limine*. *See Clipco, Ltd. v. Ignite Design, LLC*, No. 04 C 5043, 2005 WL 2861032, at *2 (N.D. Ill. Oct.28, 2005) (Conlon, J.).

In its motion, Physicians point to AAM's July 2, 2007 Interrogatory No. 18 response[1] as untimely, prejudicial, and subject to exclusion. Second, Physicians claim that the July 10, 2007 Sher report is also subject to exclusion for its untimeliness and prejudicial effect. Third, Physicians argue that AAM should be barred from presenting evidence in support of its "new defensive theory." As set forth more fully below, Physicians fail to meet this high burden with respect to each of these contentions.

### A. AAM's July 2, 2007 Interrogatory No. 18 Response

Rule 26(e)(2) obligates a party "seasonably to amend a prior response to an interrogatory...or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26.

Rule 37(c)(1) enforces the requirements of Rule 26(e)(2). Rule 37(c)(1) provides, in pertinent part: "[a] party that without substantial justification fails to . . . amend a prior response to discovery as required under Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

Ultimately, the effect of Rules 26(e) and 37 is to exclude undisclosed evidence unless the information is made known to the other side in the context of the case itself. *See Se-Kure*

---

[1] Physicians mistakenly claim in their brief that the Interrogatory No. 18 response was first proffered on July 18, 2007. *See* Pls.' Mem. at 4; *compare* Def.'s Mem. Ex. 4 at 4-5 *with* Pls.' Mem. Ex. D at 6-7.

*Controls, Inc., v. Vanguard Prod. Group.*, No. 02 C 3767, 2007 WL 781253, at *6 (N.D. Ill. Mar. 7, 2007) (Cole, M. J.).

Physicians essentially claim that AAM's July 2, 2007 Interrogatory No. 18 response failed to seasonably amend its February 23, 2007 Interrogatory No. 9 response under Rule 26(e)(2). However, under Rule 26(e)(2), AAM was not required to amend its February 23, 2007 Interrogatory No. 9 response. In any case, the July 2, 2007 Interrogatory No. 18 response was seasonably made to amend AAM's earlier response.

From early in this litigation, AAM has maintained that it did not have direct knowledge of the underlying loan transactions. AAM's initial February 23, 2007 Interrogatory No. 9 response stated that its understanding depended "in large part" on documents in Greystone's possession. *See* Def.'s Mem. Ex. 1 at 8. John Schaefer expressed a similar reservation in his testimony on May 21, 2007 (regarding his understanding of the underlying loan transactions): "I want to reiterate that I was – I do not consider myself a mortgage-backed security expert in general, I do not consider myself an FHA/VA expert specifically, and I was not involved with any of the – obviously at AAM at the time of purchase nor was I involved in any of the analysis in 1996." Pls.' Mem. Ex. B at 56. AAM made clear that because it was not a party to the underlying transactions, it did not have direct knowledge of pertinent facts.

Significantly, as discovery of Greystone transpired, AAM recognized that conflicting information regarding the underlying transactions materialized. Documents produced by Greystone and the Barolak deposition revealed that the alleged "prepayments" were not made in the fashion previously believed by AAM. The Barolak testimony armed both parties with knowledge that at least one of the loans was sold to an investor prior to the payoff of Physicians.

*See* Def.'s Mem. Ex. 2 at 96:2-107:4, 114:5-116:5. This discovery apprised both Physicians and AAM of the mechanics of the transaction that is at the very core of this case.

It therefore follows that "[t]here is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition." 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2049.1, p. 604 (2d ed. 1994); *see also Gutierrez v. AT & T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004) (amendments not required where the information pertaining to an undisclosed witness was made known to the other party during a deposition); *Cox v. Prime Fin. Mortgage Corp.*, No. 05 C 4814, 2006 WL 1049948, at *2 (N.D. Ill. Apr.20, 2006) (Conlon, J.) (same); *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, Nos. 00 C 5658 & 00 C 7086, 2003 WL 2005233, at *7 (N.D. Ill. Apr. 30, 2003) (Conlon, J.) (same).

In addition to joint discovery, AAM's July 2, 2007 Interrogatory No. 18 response itself buttressed the parties' joint discovery of Greystone, and obviated the need for any amendment to a previous interrogatory answer under Rule 26(e). *See, e.g., Weiland v. Linear Constr., Ltd.*, No. 00 C 6172, 2002 WL 31307622, at *3 (N.D. Ill. Oct. 15, 2002) (Darrah, J.) (duty to supplement disclosures under 26(e) satisfied when the other party learns of information in written discovery responses).

Nevertheless, Physicians argue that AAM's July 2, 2007 Interrogatory No. 18 response should still be excluded because it was untimely and prejudicial under *Holiday Inns, Inc. v. Robertshaw Controls, Co.*, 560 F.2d 856 (7th Cir. 1997). In *Holiday Inns*, the Seventh Circuit affirmed a decision not to allow the plaintiff to advance a new liability theory at trial because it was previously undisclosed in an unamended answer to an interrogatory. *See id. Holiday Inns* is

8

inapposite here. A pretrial order is not presently scheduled, and AAM amended its earlier interrogatory answer while discovery was still ongoing. Although it is unclear exactly when AAM became aware of the details regarding the substance of its Interrogatory No. 18 response, Physicians have not shown AAM acted in bad faith or unduly delayed amending its interrogatory answer. The record indicates that AAM's understanding changed *after* Greystone discovery; then AAM sought to amend its previous answer.[2] Physicians did not object to the timeliness of the July 2, 2007 amendment, nor did Physicians object to the timeliness of the Greystone depositions. Therefore, Physicians have not shown sufficient reason to find that AAM's July 2, 2007 Interrogatory No. 18 response was "unseasonable" or prejudicial to merit exclusion.

### B. The July 10, 2007 Sher Report

Physicians advance the same argument that the Sher report was prejudicial because it disclosed for the first time AAM's position that the payments to Physicians were "'sales'. . . having nothing to do with 'prepayments' by the borrowers." However, as noted above, this position was first disclosed in AAM's July 2, 2007 Interrogatory No. 18 response. For the same reasons discussed above, the Sher report should not be excluded.

Additionally, although the Sher report was produced one week after the court-ordered 26(a)(2) expert report deadline of July 3, 2007, *see* Minute Order, Dkt. No. 55 (Mar. 8, 2007), according to AAM, the parties agreed to extend this deadline to July 11, 2007. *See* Def.'s Mem. at 8 n.6. If true, Physicians is hard-pressed to claim it was prejudiced by its own stipulation. Physicians has failed to sustain its burden to demonstrate that the Sher report was untimely and

---

[2]According to AAM, it retained Douglass Sher in June to interpret the significance of evidence gathered from Greystone, see Def.'s Mem. at 5-6 n.3, and followed this up with its July 2, 2007 interrogatory responses.

prejudicial. The report elaborated on the July 2, 2007 Interrogatory No. 18 response, and was produced at an agreed upon date by the parties.

### C. All Other Evidence in Support of AAM's "New Defensive Theory"

Physicians seek to generally bar AAM's articulation of a "new defense theory," *see* Pls.' Reply at 1, without identifying or detailing the particulars of the evidence it seeks to exclude. Under Physicians' description, all conceivable evidence in support of AAM's "new" causation defense is subject to exclusion. Physicians' motion fails to provide any context or boundary to the evidence it seeks to exclude.

Moreover, it bears mentioning that AAM has consistently denied all allegations of causation. As this is a diversity case, state law governs questions regarding which party bears the burden of proof on substantive issues. *See Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 253 n.2 (7th Cir. 1996) (citing *Sundstrand Corp. v. Standard Kollsman Indus.*, 488 F.2d 807, 813 (7th Cir. 1973)). Contrary to Physicians' assertion, causation is not an affirmative defense, *see, e.g., Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 60-61, 643 N.E.2d 734, 748 (Ill. 1994), and need not be alleged affirmatively by AAM. *See, e.g., Leonardi v. Loyola Univ.*, 168 Ill. 2d 83, 93-94, 658 N.E.2d 450 (Ill. 1995). Therefore, AAM cannot be said to have waived a causation defense, much less waived the use of evidence derived from joint discovery of a third party.

In sum, Physicians have not offered any adequate basis to bar a "new" causation defense, or vaguely described underlying evidence. Physicians' motion inadequately identifies evidence that would be subject to exclusion.

## II. Physicians' Motion for Leave to Join Additional Defendants

Under Fed. R. Civ. P. 15(a), the court possesses wide latitude to grant leave to amend pleadings. *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). The court may grant leave unless "there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party." *Id.* The decision as to whether to an amendment to the pleadings should be allowed rests within the sound discretion of the trial court. *Jones v. Hamelman*, 869 F.2d 1023, 1026 (7th Cir. 1989).

Physicians seek leave to join the Greystone entities as additional defendants because of AAM's delayed disclosure of its "new" causation defense, and because of the risk of inconsistent judgments in the event that a separate suit is brought against Greystone. AAM opposes this motion on the ground that Physicians "has not suggested that Greystone is a necessary and indispensable party or otherwise offered any justification to add the Greystone entities to this action on the eve of trial." Def.'s Mem. at 2.

Indeed, Physicians offers little justification to add the Greystone entities, and its motion does not even address joinder in the context of Rules 19 or Rule 20. *See, e.g., Chavez v. Illinois State Police*, 251 F.3d 612, 632 n. 4 (7th Cir. 2001) (amendment seeking to add more parties must comport with Rule 20); *Chicago Dist. Council of Carpenters Pension Fund v. G&A Installations, Inc.*, No. 95 C 6524, 1996 WL 288629, at *3 (N.D. Ill. May 30, 1996) (Kocoras, J.) (same; Rule 19). What is more, Physicians fail to inform the court or AAM of the factual and legal content of the proposed amendment, or show their new claim(s) against the Greystone entities would be consistent with claims against AAM. Physicians state in a conclusory fashion that the facts newly asserted by AAM show that Physicians' losses were caused "by the intervening improper actions of the Greystone entities." *See* Pls.' Mem. at 4. This conclusory

assertion does not detail any operative facts sufficient to merit a claim. To compound this, Physicians has not proffered a proposed third amended complaint. Instead, Physicians caution against the possibility of "inconsistent judgments" should a separate suit be brought against Greystone. However, Physicians offers no context to the legal and factual issues arising out of a potential claim against Greystone. *See* Pls.' Mem. At 6-7. These fundamental deficiencies in Physicians' motion require denial.

### III. Physicians' Request to Reopen Discovery

In connection with the motion to join additional defendants, Physicians request to reopen discovery to adequately address AAM's "new" causation defense. *See* Pls.' Reply at 2. Physicians argue that additional discovery of the Greystone entities, the individual borrowers, and the purported purchasers of Physicians' investment interests is required. *See* Pls.' Mem. at 6. In response, AAM has asserted that discovery of each of these entities has already been conducted, and has revealed the substance of the transactions at issue. Discovery closed on August 6, 2007.

Physicians' motion fails to demonstrate (i) why discovery of these entities was not conducted previously; (ii) why reopening discovery would not be duplicative; or (iii) the specific scope and length of discovery that it needs. When Physicians previously moved for an extension of time, *see* Motion of Plaintiffs for Extension of Time, Dkt. No. 50 (Mar. 5, 2007), they did so because "[o]ne of the critical factual issues central to [Physicians'] claims are the circumstances attendant to the prepayment of each of the 12 loans within the Loan Pools in which [Physicians] invested." *Id.* at 3. Physicians expressly noted in its first extension motion that information pertinent to the prepayment of each of the 12 loans purchased by Physicians must be obtained

from non-parties. *Id.* The court granted an extension for this purpose, *see* Minute Order, Dkt. No. 55 (Mar. 8, 2007), and specifically admonished that no further extensions would be given. *See id.* Once this extension was granted, it was incumbent on *both parties* to discover all relevant facts pertinent to the underlying loan transactions. *See* Fed. R. Civ. P. 26 Advisory Committee Notes (1983 amendments) ("the purpose of discovery is to provide a mechanism for making relevant information available to the litigants"). Good cause has not been shown for granting yet another extension (for an unspecified amount of time) to examine the same transactions.

Additionally, reopening discovery would serve to prejudice AAM by adding additional expense and delay to the proceedings. AAM has abided by the scheduling order. Moreover, AAM has filed a timely summary judgment motion based on the facts uncovered during the discovery period. *See* Dkt. No. 73 (Aug. 6, 2007). To reopen discovery would encumber AAM and third parties with duplicative discovery.

## CONCLUSION

Physicians' alternative requests to bar evidence or to join additional defendants and extend discovery are denied.

ENTER:

Suzanne B. Conlon
United States District Judge

August 17, 2007

13